Good morning, your honor. Judges, may it please the court, I represent Ronald Miltier, the defendant below, who was convicted on eight counts involving child pornography. The government's forth in the opening and reply briefs was not adequate or sufficient to sustain the convictions of Mr. Miltier. And this is because the government had a theory of the case that frankly the evidence did not support. And the government relies upon a series of speculations in order to sustain the conviction. For example, the government contended that only Mr. Miltier had access, but in fact the evidence was that the computer did not have a password other than hitting the return. And that the family and others had access to the computer. The government speculated that Mr. Miltier could have skipped out of work or used a computer at lunch to download child pornography. But the unrefuted evidence was that he never left work early or arrived late. There were 11 files on the Acer laptop. Your honor, eight of the files were that he was not working correct. And that goes to the issue of how these downloads worked. The government's own evidence was that these files would be downloaded based on previously submitted requests to the peer-to-peer software. In other words, the date of the download is independent of any satisfied until that file became available at some other site for download. In other words, there's no correlation between when Mr. Miltier is at home and when the files are downloaded as to when those files were searched for. When whoever the user was went out through the Ares software program to research for roof work, Japan, his automobile, all things that were linking him to that thumb drive, including child pornography. No, your honor, I believe the court is slightly confused. The thumb drive had no files. It had file names. But on the thumb drive, all of those... That was a lot of those files had file names. But the file names got there because they were downloaded and emptied, right? But your honor, I will point out that on that shows, all the file names that were associated with child pornography were written to that thumb drive when Mr. Miltier, according to the uncontroverted evidence, was with his wife, his daughter, and granddaughter taking her to medical appointments. In other words, he was with three other people at the time those file names were written to the thumb drive. And there's no evidence from the government when that thumb drive was inserted into any computer to load those files. Now, the other issue, your honor, on the searches, the government relied upon emails involving Norfolk Naval Shipyard GS Pay. They did it from 2011, three years before the files that issued for the offenses were downloaded. They relied upon an internet search for 2002 GMC Envoy, undated. We don't know when that search occurred. In other words, there is no evidence that puts Mr. Miltier on the computer when files were requested to initiate the download through the Ares Peer-to-Peer software program. The government relied upon additional speculation that the computer was used in the home, but their expert testified he didn't know where the computer was when files were searched for and written. In plain view, yes, your honor, they did. In the family home. The government relied upon evidence of 489 archive file names, yet those 489 file names were written at 10 a.m. on a day when the defendant was at work. So again, the government's presenting is not tying Mr. Miltier to the illicit conduct on the computer. The government relied upon the speculation that, well, the work schedules might have changed during the summer months. Well, the problem was that the files that issued for the offenses were downloaded in March and April, not in July as the witness testified were the summer months when the counts 1 and 5, which is another point on appeal, the evidence was clear that there was, well, there was no evidence that those files were downloaded off the internet. And the government's expert conceded that those files had not been downloaded through the Ares program over the internet. And that brings me to, well, the point is, your honor, that under 2252 capital A, files have to be shipped or transported in interstate commerce. I didn't think that. I thought it said using a facility relating to interstate commerce and a computer that's connected to the internet as a facility. Correct, your honor, but you have to show the file. It was on the computer, which is an interstate connected to the interstate. Doesn't matter. That's enough. Your honor, it's not. And let me trace the that says storing child pornography on a computer that's connected to the internet is not a sufficient constitutional connection to interstate commerce. My challenge is not constitutional, your honor. It doesn't matter. It's statutory. Right, and let me walk through the statute for the court. So 2252 A. It does say facility. It does. When the statute was originally enacted. And it refers to a computer explicitly. It does. Including a computer. By any means. By any means, including a computer. Indeed. And when the statute was initially enacted, public law 104-208, 110 statute 3009-28, the statute read for 2252 capital A, A2, any child pornography that has been mailed or was then amended in public law 110-358, 122 statute 4001, because Congress found that the technological ease, lack of expense, and anonymity in obtaining and distributing child pornography over the internet has resulted in an explosion of the multi-jurisdictional distribution of child pornography. The internet is well recognized as a method of distributing goods and services across state lines. The transmission of child pornography using the internet constitutes transportation and interstate commerce. And they amended the statute to add the phrase using any means or facility of interstate or foreign commerce to qualify what shipped or transported in meant. Well, they also amended it. If we find that Congress intended to exert the rule of commerce clause by the use of the word, quote, affecting, what's your best argument that Congress excluded a computer from satisfying the nexus requirement? The evidence is this, your honor. In this public law 110-358 that I just described, they also amended 22 capital A, A5, which has the extra prong of jurisdiction that the trial court below relied upon, which is produced using any material that has moved in foreign or interstate commerce. That is a phrase that is absent from 22 capital A, A2. In 110-358 and did not include the full scope of the commerce clause in 22-52 capital A. It never reaches that third prong of Lopez. It has decided that it didn't want to. 22, it's almost dead on. It says receives any child pornography using a facility of interstate commerce including a computer. Now, it seems to me that's just dead on. He received, if he's guilty of sufficient evidence, he received on that asset a piece of computer. It was on that computer on a facility that was in commerce, i.e., a computer. No, your honor, because under that statute, the image has to be shipped or transported using a facility. I would not say that. It has to be mailed or using any facility. In other words, he receives using any facility affecting commerce or including a computer. It's pretty broad. Well, your honor, I would point out that the government cited the Page case from the 11th Circuit in their brief. And Page from the 11th Statute, the language of the statute, which seems to suggest almost any connection. Because, your honor, Congress was very clear in how they addressed different child pornography statutes. Oh, this one, A-2, that's the one you're complaining about. The one, and that's the one, your honor, that does not have the clause that it was produced using materials that had moved interstate commerce. I understand, but it doesn't need to. It does, your honor, because when they originally enacted the statute, it was shipped or transported. And they amended it simply to make it clear that using the internet to ship or transport the image was in violation. And the 11th Circuit in Maxwell, the case discussed in Page, was quite clear. When it said, Congress, in discussing 2252 capital A. I suggest that if his neighbor gave him a thumb drive of child pornography that didn't move interstate commerce, he produced it in his house and gave it to him, and he uploaded it onto the computer, he received it by a facility of interstate commerce, including computers. I disagree with you, your honor. I don't think the statute supports that. And I believe that Maxwell, the 11th Circuit, agrees. It said, quote, for 2252 capital A, that Congress has not elected to criminalize possession of all child pornography does not impact our constitutional analysis. In other words, Maxwell dealt with a computer, your honor. And the point was that Congress had the, I'm sorry to interrupt. Did it deal with a charge like counts one and five? It did, your honor. It was a 2252 capital A, A2 charge. Let's go back to my question. The statute that you're quoting includes the word affecting. Yes, your honor. But it includes the word affecting in a unitary phrase dealing with shipped or transported in or affecting interstate commerce. And as the amendment in Public Law 110-358 makes clear, Congress was looking at the Internet. They saw a gap in use of the Internet for the analysis of whether that was shipped or transported in interstate commerce. By expanding the statute to include in or affecting for shipped or transported, as their findings in Public Law 110-358 make clear, they were focusing on the Internet. They were closing that loophole. They were not attempting to make the receipt of child pornography illegal if it substantially affects interstate commerce, third prong in Lopez. Three prongs in Lopez. The first two are addressed in 2252 capital A. Third is not. Congress, for whatever reason, determined it would not reach substantially affects. I agree. That's why I don't have a constitutional challenge here. If Congress wanted to pass a statute that said all child pornography received that substantially affects interstate commerce is unlawful, it could do that. I would prefer to conclude, based on this language, that a computer is a facility of interstate commerce. Just like we had in the gun statutes. If the gun is manufactured in another state, even though the entire crime and use of the gun is intrastate, that affects interstate commerce because the gun traffic. Here, the computer is an Asian computer. Number one, it's manufactured in interstate commerce outside. And number two, it's connected to the Internet. Because 2252 capital A criminalizes visual depictions, not computers. It criminalizes that a visual depiction that is received, that has been shipped or transported in. By means, by facility, received by a facility, including a computer. What if we just forget all the other stuff and say that? Is that problematical? It is, Your Honor. Because, again, 2252 capital A criminalizes visual depictions, not computers. So the visual depiction has to. Receiving visual depictions on a computer. I agree, Your Honor. The visual, the focus is the visual depiction, not the computer. It's not enough. The focus of a gun being shot in a restaurant, that's very localized. A gun can be used legally, too. But the fact that it traveled earlier in its life in interstate commerce is sufficient connection. You're right, Your Honor, because you're equating, in your example, the gun and the visual depiction. I agree with you 100%. The visual depiction moves to interstate commerce. It was the firing of the gun. The firing of the gun was local of conduct. Here, the receiving or possessing a visual depiction of child pornography is illegal. Now the question is, what connects it to commerce? If it is received by means of a facility, affecting interstate commerce, or on a computer. These are all, to me, like Congress tried to cover almost every range of the do. Well, Maxwell says it did not, Your Honor. But I think the focus, again, the gun and the visual depiction are analogous. Not the gun. The shooting of the gun. The crime is, here the crime is the visual depiction possessing it. And in my hypothetical, it's the firing of the gun. The fact it traveled in interstate commerce had zero to do with the firing of the gun there. Well, Your Honor, I equate firing the gun with receiving the visual depiction. The act of firing, the act of receiving. But the point is, it's the gun that moved to interstate commerce, or it's the visual depiction that moved to interstate commerce. And under 2252A. You can use facilities of interstate commerce. To ship or transport. To do anything. And Congress can regulate things that are in interstate commerce. We regulate industries. We regulate communications. The FCC has opened up a field branch in interstate commerce. Even though what we're regulating is very domestic. I'm out of time. May I respond to that? Of course. Thank you. Well, the issue there, Your Honor, is that the government had no evidence the visual depiction was on the computer when the computer moved through interstate commerce. And that is what 2252A would require. Thank you very much. All right. Mr. Kosky. Good morning, Your Honors. Thank you very much. May it please the Court. My name is Joseph Kosky, and I represent the United States in this case today. And the United States asserts that the evidence in this case is sufficient to prove the defendant guilty, beyond a reasonable doubt, of all the counts. And that there is no issue with, there's no error at all with the instructions that were read to the jury. With respect to the first issue that the. . . He didn't say much about the instructions, but I thought reading the briefs, that's what he was focused on, on those two counts. Counts one and five, that the instructions were fast. On counts one and five? Counts one and five. The sufficiency of the evidence with counts one and five. In his argument, Mr. Thor stated that our forensic examiner had said that there was no evidence that those had been passed through the Internet that had been received in the ARIES program. And I would dispute that. As the forensic examiner made clear, the ARIES program had been installed and deleted on this computer a number of times. And he was able to produce a report called Downloads that the ARIES program had downloaded. But he said in his testimony that that was not a complete report. It was a snapshot of the time when he was able to compile the report. And that there are certain files that could be missing from that. More importantly, what he said was the ARIES program uses a default folder called My Shared Files. And the My Shared Files folder is where all the, by default, all the downloaded images come from over the Internet. And the counts one through seven that the government indicted the defendant with and convicted him with, all those images, when they were created on that Acer laptop, were created in the My Shared Files folder, the ARIES download default folder. Now, five of those files, and those counts, I guess, two through four and six, also appeared in the download report, but one in five did not. And that formed the basis of the defendant's motion for summary judgment on that particular or directed verdict on those particular counts. But, like I said, during his testimony and during the redirect, after he was finished testifying, after he was cross-examined, the government made those points that those files were actually found in the My Shared Files folder. And, therefore, there's sufficient evidence for the jury to conclude that they were, in fact, downloaded from the Internet. With respect to the rest of the defendant's claims with sufficiency of the evidence, he obviously overlooks a lot of the strong evidence that points him to the commission of this crime. There's evidence of a dispute resolved by the jury, yes, but we have to look at it in a light that's favorable to the government. Going back to that, counts one through five, how many counts was he convicted of? He was convicted of seven counts of receipt and one count of possession. Eight counts. Eight counts, yes, Your Honor. And were any of the sentences concurrent? I believe they were all concurrent. I'd have to double-check. If we were to agree with you, hypothetically, on counts one and five, there's something wrong with the instructions. What would that do to the sentence? For those two counts, I don't think it would change the sentence. I'd have to go back and look. My recollection was that they were all concurrent sentences for each count. Judge Dubar, in his order to deny new trial, said it was harmless error. If there is any error, it's harmless. Do you argue that, too? I would argue that, Your Honor, for the jury instruction issue. Why did you argue that? I didn't argue that in the brief because I think that the law is clear. Do you have to raise it for us to consider? Well, I mean, I think the court – We have to consider it anyway because any error has to be – Yeah, I would think that the court would have to consider it, even if the government hasn't raised it. And clearly the government hasn't raised it because the government feels that the statute and the jury instructions – You're saying there isn't any error. I don't say – yeah, exactly, Your Honor. Judge Dubar said if there is any, it's harmless. That's correct, Your Honor. So with respect to the – just touching a little bit – What is the error that you're focusing on as instruction on interstate commerce? What error are you focusing on? In response to Judge King's question with the jury instructions. I think that's what Judge Dubar was addressing. If I recall correctly, in his post-trial opinion, he was addressing the contentions of error with respect to instructions on the interstate commerce element on Counts 1 and 5. And he said there was none, I believe. And, of course, what he said, we can't change it. But he said there was none. But if there is any, it's certainly harmless in the context of the evidence in this case. Well, my reading of Judge Dubar's opinion was – That's the reason I was asking you about the sentences because I didn't remember what the sentences – whether all the sentences were concurrent or not. That could be a factor in that case. And I believe they were concurrent, but I'd have to double-check. Well, we need to know. We can find out, too. It's on the record. But my understanding of reading Judge Dubar's opinion is that he was referring to the jury instruction issue as opposed to just specifically Counts 1 and 5. I think – If it's a major error, Judge Dubar would be, yes. Right, yes. So according to my reading of Judge Dubar's opinion, the harmless error analysis he applied to the jury instruction issue – he linked in his instruction that they objected – he linked to interstate commerce finding, or at least one of them, that they could find interstate commerce was satisfied by receiving local images on a facility if the computer traveled interstate commerce. Yes, Your Honor. I think that's correct. He cited a Fourth Circuit case called Forrest, I think. That's correct, Your Honor. He cited the Forrest case, which is one of the cases the government cites in its brief, along with the Page case and Zimmerman case. And now those cases don't specifically talk about receipt, and the government admittedly couldn't find any cases that analyzed the receipt statute specifically. I want to follow up on Judge Niemeyer's suggestion, which would be a matter of first impression, whether the interstate access requirement can be satisfied by the movement of the computer. Do you think it can? I think it can be. And looking at the way the statute is written, the way the statute is worded, it's very broad. Any child pornography that has been mailed or using any means of facility or interstate or foreign commerce shipped or transported in or affecting interstate commerce by any means, including by computer, in my reading of that statute, and I think that's borne out by some of the case law that the government cited in its position, is that Congress's intent in enacting the statute is to essentially eliminate the market for child pornography in its entirety. And in doing so, it wants to eliminate all instances of receipt of child pornography that affect interstate and foreign commerce by any means, even by computer. Well, it says by any mean, by transporting them or a facility, using that facility affecting interstate commerce. Including a computer. Including a computer. That's correct, Your Honor. Including the mail. Including the mail, exactly. Because the mail hasn't been done that for years, as a matter of fact, in the context of the mail fraud statute, the wire fraud statute. Yes, Your Honor. With no interstate commerce questions about it. That's correct, Your Honor. We don't need to prosecute a fraud claim or a fraud offense if they used a mail. I guess you mail it. They carry it out by mailing a letter from across town. It violates law, right? Federal law. I believe so, Your Honor. Yes. Yes. So based on that reading of the statute, based on its broadness, I think clearly the instructions that were given by the court to the jury are an appropriate statement of the law. And I don't think that there's any error whatsoever in the way that the jury was instructed. Addressing some of the defense counsel's points, I think in his reading of the clause, it's child pornography that had been mailed, or then he claims that the second part of that, which the government reads as three different prongs, it's just one prong. And in my opinion, if you read it that way, it just becomes redundant. Because certainly if you use a means or facility of interstate or foreign commerce, you've thereby affected interstate or foreign commerce. There would be no reason to have that additional prong or additional language in that particular clause. The reason you need that additional language is you want to reach those receipts or distributions that may be purely interstate, but that have the effect by any means of affecting interstate commerce. And I think that that was what Congress's intent was in this particular case. My computer tells me that the sentences were all concurrent. Okay. That was my recollection, but I didn't want to affirm that with 100 percent certainty without having looked at it. But that's the government's argument in a nutshell. I'm happy to answer any questions that the Court may have. Thank you, Mr. Chairman. Thank you. Thank you, Your Honor. To address a number of points, our contention is that the jury instructions for counts one through seven, the receipt of child pornography, were erroneous because they included the ability for the jury to conclude that guilt was established if they found that the computer, the Acer laptop computer, had moved in interstate or foreign commerce, though it did not contain the visual depictions at the time. And that is based on the language of 2252 capital A, A2, which differs from 2252 capital A, A5, in that A5 criminalizes production using materials that have been in the state. And the Forrest case said that's all right with it. Forrest was a production case, Your Honor. Forrest did not deal with receipt. And the statutes that Congress have enacted, they've been quite clear when they wanted to criminalize using materials that moved. For example, in 2252, reproducing any visual depiction for distribution using any means or facility of interstate or foreign commerce that has, which have been mailed or so shipped using anything that is moved by computer in interstate or foreign commerce. 2251, produced or transmitted using materials that have been shipped, mailed, or transported and are affecting interstate or foreign commerce. And again, 2252 capital A, A5. So Congress intentionally did not add that using materials that have been shipped in 2252 capital A, A2. And by the district court, by including that prong in the jury instructions allowed the jury to convict based on a jurisdictional nexus that's not in the statute. And that raises the constructive. Why wouldn't the computer being mentioned in the statute be analogous to the mail being mentioned in the statute? Again, Your Honor. The mail used in the computer. Correct. For transporting or shipping. Interstate facility. For transporting or shipping the visual depiction. That is the error. That is the real issue. Maybe we need to clarify it. It's got to be the visual depiction that moves. It can't be the computer moves and then the. What do you say about the harmless error? Well, Your Honor, under FLORESCA. We don't even need to mention it. This isn't a harmless error. He didn't rephrase it. What about it? Well, Your Honor, this isn't a harmless error. We have the same sentences. If we assume there's error, what difference does it make? Because, well, my. The evidence was overwhelming. I disagree with you. It was overwhelming. Well, that's what the trial judge said. He did. I'll quote that from Judge Duvall. He did. That's my last quote. That's Judge Duvall. But my argument goes to counts one through seven were all erroneously instructed. They were constructively amended by the court by adding this jurisdictional prompt. That under FLORESCA. No, I'm talking about one in five. I thought you were talking about them. I thought you focused particularly on them. No, Your Honor. Again, my argument is that one through seven were erroneously instructed. They were constructively amended. In addition, there was no evidence. It's a discovering amendment. I understand. But then FLORESCA, then you've got to. You're right. Okay. I don't think much of that constructive amendment argument. Go ahead. That's unfortunate, Your Honor. But for one in five, then the issue is the evidence didn't support the files. I think they leave out the site. I think they'd probably leave out the statutory site. It wouldn't make any difference. They've got to get the elements in the indictment. You've got to put elements in the indictment. I mean, a lot of stuff in the indictment is particularization. But as long as the essential element's in there, the indictment's sufficient. Well, you're on the indictment. It did not charge that the visual depictions had moved over the Internet. It did not charge that the visual depictions had been stored on a computer that moved over the Internet. So that was a variance. And then by instructing the jury on this jurisdictional prong that's not extant in 2252 A.A.2, the court constructively amended that to permit the jury to convict him of a count he wasn't charged with. He wasn't charged with using materials that had shipped in interstate or foreign commerce to store, to receive the visual depictions. And, again, I keep focusing that the statute focuses on the visual depiction. It doesn't focus on the computer. It's the visual depictions that have been shipped or transported. You keep emphasizing that, but I don't get that from the statute when they say using the mail. To ship. To ship. The visual. Or using a, this is receipt. Receipt by mail. Or receipt by computer. Agreed, Your Honor. Now, both the Congress has indicated that both computers and mail affect interstate commerce. And it seems to me they're trying to reach the full scope of connecting the conduct. I mean, this conduct is so easy to connect to interstate commerce because of the use of computers. Basically, computers are an almost quintessential interstate commerce facility. I'm out of time. May I respond, Your Honor? Yeah, sure. Again, Your Honor, I think we're talking past each other a little bit in this way, in that I agree that any receipt of a visual depiction through the mail or through a computer, through the Internet, qualifies. But you have to show that the image was. . . I'm not going to say that. You keep limiting it. He has to receive. They have to prove that the image came over the Internet. That's what your concern is. The fact is I think the evidence is pretty clear. It came through this program, ERIS, at least with most of the files, which is Internet. But quite apart from that, I don't see that requirement in the statute. I read the requirement saying basically they don't like child pornography, they don't like receiving child pornography, and they're saying we're going to regulate the receipt of child pornography insofar as it affects interstate commerce, either by receiving it by the mail, receiving it by a computer, or any other means that affects interstate commerce. We just know that that's the broad one. And I think that, Your Honor, is not supported by Public Law 110-358. What Congress did. . . Oh, I thought you were talking about the statute. Yes, Your Honor. That's the public law that amended the statute to include the phrase we're discussing. Thank you very much. All right. We'll adjourn the court signing die. We'll come back in three counts when we're out. This honorable court stands adjourned, signing die. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Robert B. King, Henry F. Floyd